**NOT FOR PUBLICATION**

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY | |
| In Re: | Case No.:      20-21165-ABA |
| Ocean View Motel, LLC, | Chapter:      11 |
| Debtor. | Judge:      Andrew B. Altenburg, Jr. |

## MEMORANDUM DECISION

Before the court is confirmation of the debtor's Second Modified Plan. After an evidentiary hearing, the only objection to confirmation came from creditor Harry Falterbauer regarding the cram down of his claim. The debtor and Mr. Falterbuaer having submitted briefs on the issue, the matter is now ripe for disposition. The court finds that the debtor's proposed treatment of Mr. Falterbauer's claim is fair and equitable for purposes of section 1129(b)(2), and accordingly the plan may be confirmed.

## JURISDICTION AND VENUE

This matter before the court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and the court has jurisdiction pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a) and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984, as amended on September 18, 2012, referring all bankruptcy cases to the bankruptcy court. The following constitutes this court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## BACKGROUND

The debtor filed a Second Modified Chapter 11 Plan on November 13, 2021. Doc. No. 88 (the "Plan"). Mr. Falterbauer filed an objection on November 30, 2021. Doc. No. 93. An evidentiary hearing was held on confirmation on December 9, 2021.[1] Mr. Falterbauer objected to the debtor's proposal to replace the parties' prepetition agreements with a new note that, among other things, eliminated Mr. Falterbauer's ability to file deeds in lieu of foreclosure upon the debtor's default. The court found the debtor's witnesses to be credible and convincing and

---

[1] The U.S. Trustee filed an objection on December 2, 2021 regarding the filing of a Monthly Operating Report only. Doc. No. 100. Since the debtor filed the report prior to the confirmation hearing, the U.S. Trustee had no objections to confirmation.

concluded at the close of the evidentiary hearing that the elements of section 1129(a), except for 1129(a)(8), had been satisfied. Because section 1129(a)(8) had not been satisfied, the debtor requested the court to consider confirmation under the cramdown requirements under section 1129(b).

Section 1129(b)(1) provides that if the requirements of Section 1129(a) are satisfied, but the plan has not been accepted in accordance with Section 1129(a)(8), then "the court, on request of the proponent of the plan, shall confirm the plan ... if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b)(1). *See Bank of Am. Nat'l Trust and Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 441 (1999) (noting that the "objection of an impaired creditor class may be overridden only if 'the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan'") (quoting 11 U.S.C. § 1129(b)(1)).

The Bankruptcy Code does not set forth a standard to determine whether a plan discriminates unfairly in a cramdown scenario. Courts agree that the purpose underlying this requirement is to "ensure[ ] that a dissenting class will receive value equal to the value given to all other similarly situated classes." *Matter of Johns-Manville Corp.*, 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986), *aff'd sub nom. In re Johns-Manville Corp.*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub nom. Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988). *See also In re Young Broad. Inc.*, 430 B.R. 99, 139-40 (Bankr. S.D.N.Y. 2010) (stating that "[u]nder 1129(b)(1), a plan unfairly discriminates when it treats similarly situated classes differently without a reasonable basis for the disparate treatment"). In this case, there is no different treatment of similarly situated classes and as such, there is no unfair discrimination. Thus, the only remaining confirmation issue was whether voiding the deeds-in-lieu is unfair and inequitable. Unable to settle their differences after the hearing, the parties filed briefs regarding whether the debtor could and/or should eliminate the deed in lieu option. *See* Doc. Nos. 106, 107.

The debtor's principal, Mark Jones, and Mr. Falterbauer had collaborated on many projects in Wildwood and North Wildwood, New Jersey, and operated the Ocean View Motel there together until 2018 when they became unable to work with each other. Audio of 12/09/21 hearing at 2:44 (hereinafter, "Audio at ___"). Mr. Jones then took over, paying Mr. Falterbauer an agreed amount under certain loan documents. *Id.* After Mr. Jones defaulted, the two settled state court litigation—which Mr. Jones described as like going through a divorce—with a Settlement Agreement entered into in June 2019. Audio at 2:45, 2:47. Part of that settlement included Mr. Jones signing deeds-in-lieu of foreclosure in Mr. Falterbauer's favor to be filed upon default. Audio at 2:47.

The debtor's plan provides that Mr. Falterbauer be paid $1,630,629 amortized over 20 years at an interest rate of 6%. Plan, p. 6, ¶ 3.3. The debtor will make monthly payments of $11,975.58 beginning June 15, 2022 and ending December 15, 2026, at which time all sums will be due. *Id.* The plan further provides that the existing Note and the Settlement Agreement and Release executed by the debtor on June 27, 2019 shall be void, replaced by a new Promissory Note attached to the Plan. *Id.*, ¶ 3.3(a). At the confirmation hearing, the debtor agreed to increase the

interest rate to 7%, so the monthly payment amount will increase.[2] Audio at 3:50. The amounts due will continue to be secured by the mortgages signed in 2019. Doc. No. 88-1, ex. A to the Plan ("Ex. A"), ¶ 6.1. The parties do not dispute that the value of the property is anywhere from $2.1 to $2.4 million. Audio at 3:44.

Upon default, Mr. Falterbauer can accelerate the note. Ex. A, ¶ 8.1. Remedies include those under the 2019 mortgages. *Id.*, ¶ 9.1. Upon acceleration or maturity of the note, interest on all sums due will accrue at an annual rate five percent greater than the rate of interest under the note, i.e. 12%. *Id.*, ¶ 10.1. The debtor will also be responsible for Mr. Falterbauer's reasonable attorney fees and costs for collection. *Id.*, ¶ 11.1.

As for the debtor's other creditors, the priority claim of the New Jersey Division of Taxation will be paid in 48 monthly installments of $512 ($24,596 total) while the priority claim of the New Jersey Department of Labor will be paid in four monthly installments of $401 ($1,604) and the Internal Revenue Service will be paid its $194 claim in full. Uunsecured creditors will be paid over 48 months, beginning in January 2022, in the amount of $2,500 in the months of January, April and October, and $12,500 in July 2022 and 2023, $22,500 in July 2024, and $17,445 in July 2025 ($92,445 in total). Plan, pp. 6-7, ¶ 3.3(b).[3]

## DISCUSSION

Mr. Falterbauer objects to the elimination of the deeds-in-lieu. He argues that they were a material aspect of the 2019 settlement of obligations. He alleges that the debtor repeatedly defaulted on two mortgages years ago and agreed to the deeds-in-lieu when facing a sheriff sale. He argues that section 1129(b) could be interpreted to include a recorded lien right, while conceding that the deeds-in-lieu are not recorded but are possibly equitable rights that should be respected. He also argues that it is unfair and inequitable to make him start foreclosure proceedings all over in state court, with the debtor being able to respond and Mr. Falterbauer faced with the expense of that litigation.[4]

The debtor cited cases standing for the proposition that a chapter 11 plan can change the agreement between a debtor and a secured creditor. It argues that the factors in those cases do not support that the modification of Mr. Falterbauer's rights is inequitable. It argues that Mr. Falterbauer presented no evidence that deeds-in-lieu are standard in New Jersey commercial lending practices. It points out that Mr. Falterbauer is protected by a large equity cushion, even using the lower, $2.1 million, value. Finally, it argues that the feasibility of the plan would be

---

[2] The Note states that "This Note can only be changed by an agreement in writing signed by both the Borrower and Lender." *Id.*, ¶ 13.1. Thus, the parties may have to amend the Note or otherwise agree in writing to the change.

[3] The Plan states that the unsecured creditors will be paid pro rata, while the Disclosure Statement states that the "total payout" is 100% of the unsecured claims. Doc. No. 62, p. 16.

[4] Mr. Falterbauer suggested that the court not decide the deed-in-lieu question now, but allow the parties to return to court to litigate it upon a default of the debtor. Doc. No. 106, p. 3. This just kicks the can down the road.

negatively impacted by the threat of this hostile creditor being able to foreclose upon 30 days' delay in payment.

Chapter 11 plans may "modify the rights of holders of secured claims . . . ." 11 U.S.C. § 1123(b)(5); *see In re Bashas' Inc.*, 437 B.R. 874, 925 (Bankr. D. Ariz. 2010) (stating that section 1123(b)(5) expressly permits the debtor to strip the bank's contractual covenants); *see also In re Crystian*, 197 B.R. 803, 804 (Bankr. W.D. Pa. 1996) (citing section 1123(a)(5)(E), allowing for satisfaction or modification of any lien in a plan, so long as the modification is fair and equitable under section 1129(b)(2)). While the new terms must "'insure the safety of the principal,'" *In re TCI 2 Holdings, LLC*, 428 B.R. 117, 167 (Bankr. D.N.J. 2010) (quoting *In re Kellogg Square Partnership,* 160 B.R. 343, 368, n. 47 (Bankr. D. Minn. 1993)), "the loan documents need not track precisely the covenants in the parties' existing loan agreement." *Id.* (citing *In re American Trailer and Storage, Inc.,* 419 B.R. 412, 440–42 (Bankr. W.D. Mo. 2009)). As a modification is part of a debtor's effort to cram down the plan on a dissenting secured creditor, the terms need not be the result of "a negotiated agreement between the parties." *TCI 2*, 167.

A debtor may cram down a plan on a dissenting secured creditor class so long as the plan is fair and equitable. Section 1129(b)(2)(A)(i). "At minimum, a fully secured creditor is treated fairly and equitably if it retains the lien securing its claim and receives deferred cash payments with a present value equal to the amount of its claim." *In re Cellular Info. Sys.*, 171 B.R. 926, 937 (Bankr. S.D.N.Y. 1994). Clearly, the Plan satisfies these minimal elements as Mr. Falterbauer retains his liens securing his claim and will receive deferred cash payments with a present value equal to the amount of its claim.

But is elimination of the deeds-in-lieu themselves fair and equitable for purposes of plan confirmation? In determining whether modification of loan documents is appropriate, some courts consider "(1) whether the proposed terms and covenants unduly harm the secured creditor with respect to its collateral position; and (2) whether the inclusion of terms and conditions from the pre-bankruptcy loan documents would unduly impair the debtor's ability to reorganize." *In re Am. Trailer & Storage, Inc.* , 419 B.R. 412, 440-41 (Bankr. W.D. Mo. 2009); *see In re Charles St. African Methodist Episcopal Church of Bos.*, 499 B.R. 66, 109 (Bankr. D. Mass. 2013) (citing *American Trailer*, 441). In New Jersey, one court considered "(i) the debtors' demonstration of feasibility; (ii) the protections and risks to the secured creditor, and (iii) the general reasonableness of the proposals in light of the circumstances." *TCI 2*, 168. In addition, the new terms "must not unduly shift the risk relating to the operations and financial performance of the reorganized debtor, and must be fair and equitable to the secured creditor." *TCI 2*, 167 (citing *In re D & F Const. Inc.,* 865 F.2d 673 (5th Cir. 1989)). Perhaps more compelling, the court has not found, and Mr. Falterbauer admittedly cannot cite, *any* cases that prohibit the modification of loan documents by elimination of terms through the plan confirmation process. This is not an unusual event in plan confirmation processes.

Here, Mr. Falterbauer retains his prepetition liens on property worth well more than the amount of his claim. If the debtor defaults, Mr. Falterbauer's claim will accrue interest at 12%, compensating him for the delay caused by having to go back to state court, and protected due to the ample equity cushion. *See In re New Midland Plaza Associates*, 247 B.R. 877, 892 (Bankr. S.D. Fla. 2000) (finding that given the substantial equity cushion in the property, the modification

of the terms and conditions of the loan documents would not unduly harm the creditor). His attorney's fees and costs for that state court action will be borne by the debtor, too.

The court agrees that the feasibility of the Plan, which also pays over $26,000 to priority creditors and over $90,000 to unsecured creditors, would be hampered by the ability of one unfriendly creditor to end the debtor's operations upon default on his claim only. *See In re Charles St. African Methodist Episcopal Church of Bos.*, 499 B.R. 66, 109-10 (Bankr. D. Mass. 2013) (court agreeing with debtor that could expect hostile creditor to accelerate debt "at the first technical breach of even the most minor covenant . . . and thus case the Plan to fail. . . ."); *In re New Midland Plaza Associates*, 247 B.R. at 892 (crediting debtor's representative's testimony that were the "overly-restrictive terms of the loan to remain in place," the creditor "would try to obtain the Midland Plaza through foreclosure by inducing a non-monetary default so as to invoke the twenty-one day non-judicial foreclosure process in Tennessee, thereby frustrating the ability of the Debtor to reorganize successfully under its confirmed Plan."). Voiding the deeds-in-lieu contributes to the plan's feasibility, as they prevent confirmation from being followed by the liquidation or need for further financial reorganization. *See* 11 U.S.C. § 1129(a)(11).

Mr. Falterbauer argues that the deed-in-lieu provision acts as additional security for his loan. But while the deed-in-lieu provision may provide security in the layperson sense of being free from danger or threat, it does not operate as a security interest in the legal sense. Rather, it is a covenant contained in the Settlement Agreement that provided him a remedy upon default of foreclosing on his mortgages, the actual security interests. *Compare In re Crystian*, 197 B.R. at 804 (describing hazard insurance proceeds, the tax and insurance escrow, and condemnation proceeds as covenants, not part of the security interest), *with In re Penn Cent. Transp. Co.*, 458 F. Supp. 1234, 1256 (E.D. Pa. 1978) (considering covenant that would result in a substantial cash buildup in the debtor to "insure[] the adequacy of the security" available to satisfy the first lien on the reorganized debtor). Thus, the court does not credit this argument.

## CONCLUSION

Accordingly, Mr. Falterbauer's objection is overruled and this court will confirm the debtor's Second Modified Plan. The debtor is directed to submit a form of order confirming the Plan.

The court reserves the right to revise its findings of fact and conclusions of law.

/s/ Andrew B. Altenburg, Jr.
United States Bankruptcy Judge

Dated: January 25, 2022